Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports.  Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 24, 2008          Decided December 23, 2008

No. 07-5316

AMERICAN POSTAL WORKERS UNION, AFL-CIO,
APPELLANT

v.

UNITED STATES POSTAL SERVICE,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 04cv01404)

———

*Melinda K. Holmes* argued the cause for appellant.  With her on the briefs was *Anton G. Hajjar.*

*Brian P. Hudak*, Assistant U.S. Attorney, argued the cause for appellee.  With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: ROGERS, GARLAND and KAVANAUGH, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: This appeal concerns the interpretation of an arbitration award. The arbitration arose under a settlement agreement addressing the parties' disputes about whether their collective bargaining agreement ("CBA") required the assignment of the positions and the duties of particular job classifications to the bargaining unit represented by the American Postal Workers Union ("the Union"). In response to the Union's lawsuit to compel enforcement of an arbitrator's award regarding one such classification, the district court granted summary judgment for the U.S. Postal Service, ruling that the award addressed only the scope of the bargaining unit — which workers the Union represents — and not work assignments — which work the represented workers are entitled to do. Upon *de novo* review, we conclude that the award addressed both issues.

**I.**

In 1999, the Union and the U.S. Postal Service entered into a settlement agreement to resolve a number of disputes arising under their CBA about unit scope and work assignments. Formal grievances as well as a petition to the National Labor Relations Board ("the Board") for unit clarification had been filed. Under the settlement, the parties agreed to arbitrate six grievances, each involving a different position in the executive and administrative service, before a single arbitrator. This appeal involves the Union's August 1998 grievance regarding the Address Management System ("AMS") Specialist position.

On April 29, 2003, the arbitrator issued the following award:

Having carefully considered all evidence submitted

by the parties concerning this matter, the arbitrator concludes that the "Address Management System Specialist" position is a part of the [Union] bargaining unit and that it is a violation of Article 1.2 of the [CBA] to exclude the position and the disputed work from the bargaining unit. The arbitrator shall retain jurisdiction in this matter for ninety days from the date of the report in order to resolve any problems resulting from the remedy in the award. It is so ordered and awarded.

The Postal Service, after receiving no response to its request that the arbitrator withdraw the award, filed a petition with the Board to clarify that the AMS Specialist classification was excluded from the bargaining unit. The Regional Director, although initially dismissing the petition in light of the parties' agreement to arbitrate disputes about unit scope, granted the petition on February 23, 2007 upon remand from the Board. On remand the Union had disclaimed interest in representing postal employees in the AMS Specialist classification, while emphasizing that its disclaimer was not to "affect that part of the award which found that the Postal Service violated the [CBA] by failing to assign non-supervisory and non-managerial AMS duties to the [Union] bargaining unit." Letter from Cliff Guffey, Executive Vice President, American Postal Workers Union, ALF-CIO, to John Dockins, U.S. Postal Service, Jan. 29, 2007.

Meanwhile, on August 18, 2004 the Union had sued the Postal Service to compel future arbitrations pursuant to the settlement agreement. Following issuance of the 2003 Award, the Union had filed a separate lawsuit to compel the Postal Service to comply with the award. The district court consolidated the lawsuits and denied the Postal Service's motions to dismiss or alternatively to stay. The district court also denied without prejudice the Union's motion for summary

judgment regarding future arbitration proceedings. In August 2006, the parties cross-moved for summary judgment. The Union, while conceding that the 2003 Award was unenforceable to the extent that it provided the AMS Specialist position was included in the bargaining unit, argued that the award included an independent, enforceable finding that the work performed by AMS Specialists belonged to the unit. The Postal Service argued that the award addressed only the placement of the AMS Specialist position, and in the alternative, that the Union's interpretation would render the award unenforceable under Section 7 of National Labor Relations Act ("NLRA"), 29 U.S.C. § 157.

On August 7, 2007, the district court granted summary judgment to the Postal Service, ruling that the 2003 Award addressed only the question of the placement of the position. *Am. Postal Workers Union v. United States Postal Serv.*, 499 F. Supp. 2d 24, 27 (D.D.C. 2007). Concluding from the analysis accompanying the award that the arbitrator thought that position placement was "the relevant issue to be decided" and that work assignment was "a question to be addressed in the alternative, if at all," the district court reasoned that because the arbitrator had found that the position should be included in the bargaining unit the arbitrator must not have decided whether any or all of the work should be assigned to the bargaining unit workers. *Id.* The Union appeals, and our review is *de novo*. *See Defenders of Wildlife v. Gutierrez*, 532 F.3d 913, 918 (D.C. Cir. 2008).

## II.

The 2003 Award is the arbitrator's interpretation of the CBA. As such, judicial review of the award is "extremely limited," and the award may not be overturned on the basis of even a serious error if the arbitrator was "even *arguably* construing or applying the contract and acting within the scope

of his authority." *Teamsters Local Union No. 61 v. United Parcel Serv., Inc.*, 272 F.3d 600, 604 (D.C. Cir. 2001) (internal quotation marks omitted) (emphasis in original). However, the primary issue here is not whether the arbitrator properly construed the CBA or exceeded his authority, but what the 2003 Award means. To answer that question, a court first looks to the four corners of the award, for arbitration awards "may be made without explanation of [the arbitrators'] reasons and without a complete record of their proceedings." *Wilko v. Swan*, 346 U.S. 427, 436 (1953); *see Sargent v. Paine Webber Jackson & Curtis, Inc.*, 882 F.2d 529, 532 (D.C. Cir. 1989).

An arbitration award, as a conceptual matter, is to be "treated as though it were a written stipulation by the parties setting forth their own definitive construction of the contract." *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1475 (D.C. Cir. 1997) (*quoting* Theodore J. St. Antoine, *Judicial Review of Labor Arbitration Awards: A Second Look at* Enterprise Wheel *and its Progeny*, 75 MICH L. REV. 1137, 1140 (1977) (footnote omitted)); *see Am. Postal Workers Union v. United States Postal Serv.*, 789 F.2d 1, 6-7 (D.C. Cir. 1986). Thus, the interpretation of an arbitration award is, like the interpretation of a contract, primarily a question of law, *see O'Hara v. District No. 1-PCD,* 56 F.3d 1514, 1522 (D.C. Cir. 1995), and like a contract, analysis of what an arbitration award means must begin with its text, *see id.* at 1523; *cf. also Am. Fed'n of Gov't Employees, Local 2924 v. Fed. Labor Relations Auth.*, 470 F.3d 375, 381 (D.C. Cir. 2006). Because we conclude that the 2003 Award is unambiguous on its face, we need not decide under what circumstances a court may appropriately look to the arbitral record to resolve an ambiguity and thereby render the award enforceable, *see, e.g., Ethyl Corp v. United States Steelworkers of Am.*, 768 F.2d 180, 188 (7th Cir. 1985); *see also Riley Stoker Corp. v. Fidelity & Guar. Ins. Underwriters*, 26 F.3d 581, 586 (5th Cir. 1994), rather than remand for the arbitrator to clarify

the award, *see U.S. Energy Corp. v. Nukem, Inc.,* 400 F.3d 822, 830-31 (10th Cir. 2005); *Tri-State Bus. Machs., Inc.*, *v. Lanier Worldwide, Inc.*, 221 F.3d 1015, 1019 (7th Cir. 2000).

The operative sentence of the 2003 Award is: "Having carefully considered all evidence submitted by the parties concerning this matter, the arbitrator concludes that the 'Address Management System Specialist' *position* is a part of the [Union] bargaining unit *and* that it is a violation of Article 1.2 of the [CBA] to exclude the position and the *disputed work* from the bargaining unit." (emphasis added). Article 1.2 lists those job classifications that are excluded from coverage under the CBA, such as managerial and supervisory personnel, professional employees, and mail handlers. The operative sentence contains three findings by the arbitrator: (1) The AMS Specialist position is a part of the bargaining unit; (2) excluding the position from the bargaining unit violated the CBA; and (3) excluding the work from the bargaining unit violated the CBA. The plain meaning of the third finding unambiguously determined that exclusion of the disputed work from the bargaining unit violated the CBA. Nothing in the structure of the sentence suggests that the third finding depends on or follows from the first or second findings. Indeed, the only potential ambiguity in the language of the award concerns the redundancy of the first and second findings. But those findings are not at issue here as the Union concedes they are unenforceable in light of the Board's determination that the AMS Specialist position is excluded from the bargaining unit.

Contrary to the suggestion of the Postal Service, the arbitrator's analysis is entirely consistent with the plain meaning of the 2003 Award. In section VI.B of the analysis, "Construing the Intent of the Parties," the arbitrator reviewed the text of the CBA and concluded, in light of Article 1.2's listing of excluded job classifications and the interpretive canon of *expressio unius*,

that "it is reasonable to conclude that the parties intended *the work and the position* to be in the bargaining unit." *Analysis* at 22 (emphasis added). His analysis proceeded to address the more difficult question of whether including the AMS Specialist position in the bargaining unit was consistent with applicable labor relations law. Concluding that it was, the arbitrator nonetheless emphasized that the "parties' collective bargaining agreement ultimately is dispositive," *id.* at 33, twice repeating that Article 1.2 of the CBA precluded the Postal Service from assigning the disputed work outside the bargaining unit. This discussion amply supports the third finding of the award that the CBA would be violated if the disputed work were excluded from the bargaining unit. To the extent the Postal Service looks to so-called Union "admissions" in pleadings, those "admissions" cannot alter the plain meaning of the award.

The district court reached a different conclusion, relying principally on the statement of issues at the beginning of the arbitrator's analysis. 499 F. Supp. 2d at 27. The arbitrator described the questions before him as (1) whether the AMS Specialist position should be included within the bargaining unit, and (2) "[a]lternatively does this position contain duties belonging in the [Union] bargaining unit?" *Analysis* at 3. The statement of the issues cannot bear the weight that the district court placed upon it. Just as parol evidence may not be used to vary the plain meaning of a contract, *see Am. Fed'n of Gov't Employees, Local 2924 v. Fed. Labor Relations Auth.*, 470 F.3d 375, 383 (D.C. Cir. 2006), the arbitrator's analysis generally cannot vary the plain meaning of the award, *see Ethyl Corp.*, 768 F.2d at 188; *cf. also Enterprise Wheel*, 363 U.S. at 598. The award and the accompanying analysis in fact address both position placement and work assignment. The arbitrator explained that he did not think it possible to separate the parties' intent as to the placement of the AMS Specialist position from their intent as to assignment of the work performed by AMS

Specialists. *Analysis* at 34-36. This is hardly surprising since the parties agree that assigning the duties performed by AMS Specialists to the bargaining unit means that only members of the bargaining unit will be able to perform the non-supervisory, non-managerial AMS Specialist duties. *See* Appellee's Br. at 24-25; Appellant's Reply Br. at 10. But even though consideration of position placement and work assignment may, in practice, overlap, *see Local 666 v. NLRB*, 904 F.2d 47, 50-51 (D.C. Cir. 1990), in this case the two were listed as conceptually distinct issues and they remained that way in the award itself.

The Postal Service contends, as a result, that enforcing the 2003 Award would violate the rights of currently employed AMS Specialists under Section 7 of the NLRA because these employees would be forced to choose between losing their jobs and being represented by the Union in the absence of majority consent thereto. It maintains that because the AMS Specialist position has been historically excluded from any bargaining unit, neither the position nor its work may be accreted into an existing bargaining unit. The Union observes that the 2003 Award allows it to reclaim bargaining unit work and that it has already disclaimed interest in representing the AMS Specialist employees and thus those occupying that position would continue to be non-union employees. Appellant's Reply Br. at 9-10. Although a court owes deference to the arbitrator's interpretation of the CBA, an arbitration award that is in "explicit conflict" with "other laws and legal precedents," *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43 (1987) (internal quotation marks omitted); *see also Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83-84 (1982), is unenforceable. It is not immediately apparent whether the transfer of AMS Specialist duties to the bargaining unit would be an unlawful accretion under Board precedent. *See Kaiser Found. Hosp.*, 343 N.L.R.B. 57 (2004); *Lockheed Martin Tactical Aircraft Sys.*, 331 N.L.R.B. 1407 (2000). The district court did not reach the

question of enforceability. Accordingly, we reverse and remand the case for the district court to decide in the first instance whether the third finding in the operative sentence of the 2003 Award is enforceable. *See, e.g.*, *Steele v. Schafer*, 535 F.3d 689, 695 (D.C. Cir. 2008).